# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> MARCHELLO MOORE, ) </br> Defendant. ) | No. 14-cr-20219-SHL |

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the Magistrate Judge's Report and Recommendation on Defendant Marchello Moore's ("Moore") Motion to Suppress, recommending denial of the Motion. (ECF No. 66.) Moore submitted his Motion to Suppress and an amendment to that Motion on December 22, 2014, and February 13, 2015, respectively. (ECF Nos. 20, 32.) The Government timely responded. (ECF No. 34.) For the reasons discussed below, the Court **ADOPTS** the Report and Recommendation. Accordingly, Moore's Motion to Suppress is **DENIED**.

I. STATEMENT OF THE CASE

Moore was indicted by a grand jury in a superseding indictment charging eight separate counts: four of robbery; three of knowingly using, carrying and brandishing a firearm during three of the robberies; and one of being a felon in possession of a firearm. (ECF No. 42.) He seeks to suppress the following evidence: 1) pre-trial identifications by two witnesses who were shown a photographic lineup to identify Moore as the robber of a First Tennessee Bank on April 7, 2014, and 2) all evidence seized as a result of his arrest on April 10, 2014. (ECF No. 32.)

Moore argues that the photographic lineup was unnecessarily suggestive. Both of the witnesses were shown a photo lineup on the day of the robbery, April 7, 2014, and were unable to identify Moore from that lineup. There were six photos of black males in that lineup, which included a photo of Moore taken six years prior. Eight days later, however, the same witnesses were given a new photo lineup with a photo of Moore taken from his arrest seven days earlier. Both witnesses then identified Moore from the second lineup. Moore argues that the second lineup was impermissibly suggestive because he was the only person to be repeated from the first lineup. The Government argues that this methodology is not impermissibly suggestive for two reasons: 1) the two photos of Moore are not the same (in fact, the second one is the more recent and thus more reliable photo), and 2) the photos of Moore were not in the same place in both of the arrays (moved from position number three to position number five).

Moore also argues that the police officers who arrested him on the evening of April 10, 2014, lacked both a warrant and probable cause, thus making his arrest improper under the Fourth Amendment. Consequently, he seeks to suppress the gun that was recovered from the Durango he was driving when he was arrested. The Government argues that there was probable cause to arrest Moore because one of the robbery victims had identified him at noon on that same day, and, further, the warrantless arrest was proper because it was executed in a public place.

II.  STANDARD OF REVIEW

A magistrate judge may submit to a judge of the court proposed findings of fact and recommendations for the disposition of a motion to suppress. 28 U.S.C. § 636(b)(1)(B). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 149 (1985). After reviewing the evidence, the court may accept,

reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C). The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id. When neither party objects to the magistrate judge's factual or legal conclusions, the district court need not review those findings under a *de novo* or any other standard. Thomas, 474 U.S. at 150.

III. ANALYSIS

The Magistrate Judge's Report and Recommendation recommended that this Court deny Moore's Motion to Suppress. (ECF No. 66.) Moore made seven objections to the Report and Recommendation's findings of fact, and five objections to its conclusions of law. (ECF No. 76.) This Court shall therefore review Moore's objections, in kind, under a *de novo* standard.

A. Objections to the Factual Findings

1. First Objection

Moore objects to the absence of a factual finding that Sheila Alford ("Alford") testified that police officers had told her that there was a suspect arrested prior to being shown a photo array. (ECF No. 76 at 1.) Alford was a cashier at a Family Dollar Store that was robbed on March 30, 2014. According to her testimony, Alford identified Moore as the robber from a photo lineup shown to her at noon on April 10, 2014. (ECF No. 83 at 52). The Government argues that this identification substantiates the officers' probable cause to arrest Moore in a public place that evening. (ECF No. 60 at 3.) Moore's current objection, however, alleges that Alford was told that Moore had already been arrested prior to her identification of him in the photo lineup. Consequently, the identification could not have possibly been the *ex-ante* justification for Moore's arrest. Upon review of the hearing testimony, Moore's objection is without merit.

3

At the hearing, Alford testified as follows:

> Q: Isn't it true on that day, May 13th, 2014, if I'm not mistaken, you testified under oath that you told officers it was a Tahoe?
> A: That's correct.
> Q: Did the officers at some point tell you that it was a Durango?
> A: Yes, ma'am.
> Q: Did they tell you they had arrested someone in a Durango that did this?
> A: Yes, ma'am.

(ECF No. 83 at 44-45.) There is no indication from this testimony that the officers had informed Alford that Moore had been arrested prior to her identification of him on April 10. It simply states that "at some point" she learned that the person who was arrested actually drove a Durango, and not a Tahoe. In fact, later in her testimony, she indicates that officers had explained to her "that they had someone in mind that might have done this" prior to her identification. (ECF No. 83 at 52.) Having someone in mind is not having someone in custody.

Moore also objects to the finding that Alford was a credible witness "when she was clearly impeached concerning what type of vehicle her assailant drove." (ECF No. 76 at 2.) Moore initially told police officers that the getaway vehicle from the Family Dollar Store was a Tahoe. She explained in her testimony that "I told him it was a Tahoe. I didn't know it was a Durango at the time." (ECF No. 83 at 47.) The Court does not find Alford's inability to correctly identify the exact make and/or model of a getaway car as a proper basis to void Alford's credibility. Moore's first objection is therefore without merit.

2. Second Objection

Moore objects to the Magistrate Judge's finding of witness Karl Chambers' ("Chambers") testimony as credible "when in fact, he was impeached by the testimony of Investigator Michael Pryor." (ECF No. 76 at 2.) As is detailed in the Report and Recommendation, Chambers worked across the street from the Family Dollar Store that was

4

robbed on March 30, 2014. Chambers explained in his testimony that, on March 30, 2014, he told police officers that he saw the getaway car and that it was a Durango. (ECF No. 83 at 57.) Michael Pryor ("Pryor"), an investigator for the Government, then testified that he interviewed Chambers "on April 3rd," and that Chambers never mentioned the make or model of the getaway car. (ECF No. 83 at 61.) Pryor testified that Chambers had merely told him that the getaway car was a tan-colored vehicle with tinted windows. (Id.)

The Magistrate Judge found Chambers' testimony to be credible, nonetheless, because she reasoned that "it is conceivable that [Chambers] did tell the police [that the car was a Durango] but failed to mention it a year later in his interview with Pryor." (ECF No. 66 at 5.) This point is well taken. However, it is not entirely clear from the transcript whether Pryor did in fact interview Chambers on April 3, 2014, or on April 3, 2015 – that is, whether the interview occurred a year later or not. As noted above, Pryor responded that he interviewed Chambers on "April 3rd" without any indication as to the year. Nevertheless, there is no evidence that Chambers told Pryor that it was *not* a Durango – Pryor simply states that Chambers did not tell him what the make and/or model of the car was. Omitting a fact, whether a year or simply a few days later, is not commensurate to stating a contradictory fact. Therefore, the Court finds that Chambers' testimony was credible and Moore's objection is without merit.

      3. Third Objection

Moore objects to the Magistrate Judge's "failure to rely on the FBI 302 reports admitted into evidence in making her credibility determination of the various tellers at First Tennessee Bank including Darrin Hollins, Crystal Russell, and Quinton Russell." (ECF No. 76 at 2.) There are four FBI 302 Reports in evidence, one for each of the following people: Darrin Hollins, Crystal Russell, Quinton Russell and Bridjette Wright. (Exs. 7, 11-13.) These reports contain

5

information from the witnesses describing how the First Tennessee Bank was robbed and identifying characteristics of the suspect.

Contrary to Moore's allegation, the Magistrate Judge specifically recited information from the reports in her findings of fact. (See ECF No. 66 at 7-10.) More importantly, the only inconsistency between the reports and the Magistrate Judge's findings is that Crystal Russell described the suspect as having worn "blue faded jeans" in the report whereas the Magistrate Judge described the statement as "blue jeans." (FBI 302 Report of Interview of Crystal Russell, Ex. 12; ECF No. 66 at 8.) Without any significant inconsistencies between the testimony and the reports of said witnesses, there is no basis to find that the witnesses' testimony lack credibility. Moore's objection is without merit.

    4. Fourth Objection

Moore objects to the Magistrate Judge's "failure to address the credibility of First Tennessee Security Guard Bridgjette Wright, who reviewed a photo lineup containing a photo of the Defendant, but was unable to make an identification." (ECF No. 76 at 2.) Moore notes that "the report did not reference her testimony at all." (Id.) It is unclear to the Court how Wright's credibility was called into question (and thus should have been addressed by the Magistrate Judge). Her testimony is both consistent throughout the hearing and with the incident report she filed on the day of the robbery. (See Incident Report by Bridgette Wright, Ex. 14; ECF No. 83 at 116-123.)

Moore may, in fact, be objecting to what he considers insufficient weight given to Wright's testimony by the Magistrate Judge. However, the fact that Wright could not identify Moore from a photo lineup does not affect the admissibility of other witness' pretrial identifications or the legality of Moore's arrest. Additionally, Wright indicated that she never

6

saw the suspect's face at the bank because he was facing away from her – a fact that clearly affects her ability to identify Moore in a photo lineup limited to faces and necks. Accordingly, Moore's fourth objection is without merit.

> 5. Fifth and Sixth Objections

Both of Moore's fifth and sixth objections call into question the credibility of Detective McDonald based on a factually improbable scenario and inconsistent testimony. (ECF No. 76 at 2.) The Court does find a disparity in Detective McDonald's statement of the events. However, Detective McDonald's testimony is not vital in establishing either probable cause for Moore's arrest or the legality of the pretrial identification of Moore.

First, Moore alleges that Detective McDonald testified to what would be a factually impermissible deduction. Specifically, Detective McDonald stated that he identified Moore as the at-large individual by seeing his face through an open window of the Durango. Moore argues, however, that this testimony does not square with Detective McDonald's further assertion that Moore was speeding and that he was pulled over from behind. Those statements, taken together, *would* be problematic; but Moore's allegation is a misstatement of the testimony.

Detective McDonald testified that "the way that the windows were when [he] pulled [Moore] over . . . [gave him] a clear view of the suspect Marchello Moore." (ECF No. 83 at 17.) He did not state that this is why or how he initially identified Moore. He instead testified that he was asked to find and arrest Moore on suspicion of robbery, that he was given Moore's identifying information (including a description of the Durango and its tag number), and that he personally stopped Moore for a "traffic stop," namely, speeding. (ECF No. 83 at 13-15.) It is curious that Detective McDonald testified that Moore was pulled over for speeding even though Moore was never given a speeding ticket and the alleged speeding was never mentioned in the

7

arrest ticket or the Affidavit of Complaint (ECF No. 83 at 18-19), but those facts are not relevant to the current motion. How exactly Detective McDonald pulled Moore over is not a fact of consequence if, as is explained below, Detective McDonald had probable cause to believe that Moore had committed a felony.

Second, Moore argues that Detective McDonald testified that he was informed of Moore's at-large status and identifying traits in a task force meeting with Sergeant Willie Mathena (ECF No. 83 at 21), whereas the Government's Response to Moore's Motion stated that Detective McDonald received a phone call from Detective Gray to provide him with said information. (ECF No. 34 at 8). This is obviously an inconsistency, but it is unclear who that inconsistency is attributable to: Detective McDonald or the Government.

Despite the disparity and curious testimony mentioned above, the legality of Moore's arrest turns solely on whether probable cause existed, not how Detective McDonald identified Moore. As discussed below, probable cause existed to execute a warrantless arrest for Moore. As such, Moore's objection to Detective McDonald's credibility is inapposite.

      6. <u>Seventh Objection</u>

Moore objects to the Magistrate's factual finding that Moore's "vehicle was searched at some point, and a gun was located in the vehicle," and also that "there was no other testimony about when the search was conducted, by whom the search was conducted, and what was recovered in the search." (ECF No. 66 at 10-11.) In her Report and Recommendation, the Magistrate Judge "ma(de) no findings with respect to the search of the vehicle." (<u>Id.</u>) Moore states, contrarily, that the arrest ticket produced on April 10, 2014, "clearly showed" that Moore was charged with being a felon in possession of a handgun. (ECF No. 76 at 3.) Because the arrest ticket was made an exhibit at the hearing, Moore contends that there is evidence that the

8

gun must have been found "prior to the charge being made on April 10, 2014." (Id.) While it appears to be true that the gun had to be found before the arrest ticket was signed, that fact does not answer the question on this issue: namely, whether the arrest itself was legal.

The Court does find ambiguity, however, in how and why the vehicle was searched: was it incident to an arrest, as an inventory or under the automobile exception? According to the Government's Response to Moore's Motion, the gun was discovered when the vehicle was inventoried "pursuant to towing the vehicle." (ECF No. 34 at 8.) Detective McDonald, however, made no mention at the hearing of why or how he conducted the search of the Durango, other than to say that he personally searched both Moore and the vehicle. (ECF No. 83 at 24.) This ambiguity aside, the Court notes that Moore has only sought to suppress evidence pursuant to an illegal arrest and not as an illegal search subsequent to a proper arrest. Because the Court finds that Moore's arrest was properly executed, and the Magistrate Judge makes no findings that are inconsistent with the testimony, his objection to these factual findings is misplaced.

B. Objections to the Conclusions of Law

1. First Objection

Defendant objects to the Magistrate Judge's finding of probable cause "based on the statements that they could see Mr. Moore and identify him from behind, in a speeding car." (ECF No. 76 at 4.) Based on the testimony presented at the hearing, the Court finds that there was sufficient probable cause to arrest Moore on the evening of April 10, 2014.

When a warrantless arrest occurs in public, the issue is whether the arresting officer had probable cause that the suspect committed a felony, not how the arresting officer located the potential felon. United States v. Watson, 423 U.S. 411, 418 (1976); see also v

Atwater v. City of Lago Vista, 532 U.S. 318, 339 (2001) (holding that probable cause is sufficient to arrest an individual found in a public place who was suspected of committing certain misdemeanors). Because Moore had been identified earlier in the day as the person who robbed the Family Dollar Store, the police had probable cause to believe that Moore committed the crime. They were thus entitled to arrest him in a public place without a warrant.

### 2. Second Objection

Moore objects to the Magistrate Judge's notation that Moore did not introduce expert testimony as to eyewitness identification at the hearing. (ECF No. 76 at 4.) It is unclear how this constitutes an objection. Rather, the absence of such testimony simply goes to Moore's strategic legal decisions for the hearing. This objection is without merit.

### 3. Third Objection

Moore objects to the legal conclusion that the second photo array was not impermissibly suggestive. (ECF No. 76 at 4.) As discussed above, Hollins and Crystal Russell were shown two different photo arrays: one on the day of the burglary and the other eight days later. Moore objects, arguing that the process was impermissibly suggestive because he was the only person replicated in both arrays.

"It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals." Simmons v. United States, 390 U.S. 377, 383 (1968). "There is some danger that the witness may make an incorrect identification . . . [and] this danger will be increased if the police show . . . [the witness] the pictures of several persons among which photograph of a single such individual recurs or is in some way emphasized." Id. Such a maneuver may be "so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant is] denied due process of law." Simmons

v. United States, 390 U.S. 377, 383 (1968). To determine whether an identification procedure violates due process, the Sixth Circuit has adopted the following test:

> First, a defendant bears the burden of proving the identification procedure was impermissibly suggestive. Second, if the defendant proves that the identification procedures were impermissibly suggestive, the trial court must determine whether, under the totality of the circumstances, the testimony was nevertheless reliable.

United States v. Hill, 967 F.2d 226, 230 (6th Cir. 1992) (internal citations omitted).

Addressing the first part of the test, the Supreme Court found that "the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned [as unnecessarily suggestive.]" Stovall v. Denno, 388 U.S. 293, 302 (1967). Despite the Court's concerns for misidentification, it was "unwilling to prohibit [the] employment [of photographic identification], either in the exercise of [its] supervisory power or, still less, as a matter of constitutional requirement." Simmons v. United States, 390 U.S. 377, 384 (1968).

This Court is guided by the following two cases in determining where to draw the line between unnecessarily suggestive and appropriate identification procedures. In Foster v. California, 394 U.S. 440, 441 (1969), the Court found the pretrial identification of the suspect to be unnecessarily suggestive under the following circumstance: a witness was shown a corporeal lineup of three men, the suspect being a half foot taller than the other two men; then the witness was placed in a room with just the suspect for a one-on-one confrontation; and then the witness was later shown another corporeal lineup with the suspect being the only repeat individual. Id. "In effect, the police repeatedly said to the witness, 'This is the man.'" Id. at 442.

On the other hand, the Sixth Circuit found the following pretrial identification procedure to pass constitutional muster: on the same night of the crime, the suspect was arrested and his car

11

brought to the police station; the witnesses were then brought to the police station and positively identified the car in the parking lot; the witnesses were then asked to identify the suspect as he was walked across the police parking lot by a police officer; and then the witnesses were shown a lineup of five men and again identified the suspect. Sewell v. Cardwell, 454 F.2d 177, 179 (6th Cir. 1972).

Here, the two witnesses were shown a photographic lineup of six black males on the day of the robbery, including a photo of Moore taken six years ago. They were unable to identify Moore, or anyone else, from the lineup as the robber. Then, on the day that Moore was arrested (eight days after the first photo array), the witnesses were given another photographic lineup with a photo of Moore from that day. The only individual repeated from the first array to the second array was Moore. In this situation, the Court is concerned with the police essentially telling, hinting at or intimating that a particular individual in the lineup is in fact the person the witness should be identifying. Because identifications are highly susceptible to error, yet massively influential to juries, this Court does not proceed cavalierly in determining the suggestiveness of a procedure. Nonetheless, upon reviewing the photo arrays here, the procedure was not unnecessarily suggestive.

First, the first photo and second photo of Moore are significantly different. In the first photo, Moore is looking directly in the camera, is well-lit, his hair on his face and head look recently manicured, and he looks to be of average weight. In the second photo, Moore looks older, has arched eyebrows, is looking down at the corner of the screen, both his facial hair and hair on his head are not recently trimmed, and he looks heavier. Second, the police officer moved Moore's photo from position number three to position number five from the first array to the second array. Third, there was an eight day gap in between viewing the first and second

12

array. And, lastly, the five other photos in each array look to be an effort to present similar images. Comparing these facts to those of Foster v. California and Sewell v. Cardwell, where witnesses confronted the exact same person several times over a single day or night, makes the current procedure appear manifestly appropriate.

Because the Court finds that the procedure was not unduly suggestive, it does not consider the reliability of the witnesses' identifications independent of the identification procedure.

           4. Fourth Objection

Moore objects to "the conclusion that Quinton Russell did not have the best vantage point to view the actual robber at the First Tennessee Bank." (ECF No. 76 at 4.) This appears to be an objection to a factual conclusion, not a legal conclusion of law. Quinton Russell was a teller at the First Tennessee Bank working the day it was robbed. In his FBI 302 Report, he described to the investigating officer that he had made brief eye contact with the suspect while the suspect was standing in line. (FBI 302 Report of Quinton Russell, Ex. 7.) At the hearing, however, he testified that he did not recall making eye contact with the suspect, and, in fact, only remembered that he had to leave work early that day. (ECF No. 83 at 114-115.) On review of the evidence, it appears simply that he had a vantage point, not whether he had a good or bad one. Nonetheless, this fact does not go to the admissibility of either the pretrial identifications of Moore by other witnesses or the legality of his arrest.

Moore argues that Quinton Russell's inability to identify Moore in the second photo array, while not having seen the first photo array, buttresses the suggestiveness of the procedure used by the police. (ECF No. 66 at 19.) However, the Court finds that there is sufficient

13

evidence that the procedure was not unnecessarily suggestive, Quinton Russell's inability to identify Moore notwithstanding.

     5. Fifth Objection

Moore objects to the legal conclusion "that teller Hollins [sic] accuracy in making identification was enhanced due to the fact that he was being robbed at that time." (ECF No. 76 at 4.) Moore then cites to an Innocence Project Fact Sheet regarding eyewitness identification reform. This question goes to the weight of the evidence, and not its admissibility. As explained by the Magistrate Judge, Moore may seek to introduce an expert on eyewitness identification if he finds it strategically proper for trial or further hearings. This objection is therefore without merit.

IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is **ADOPTED**. Defendants' Motion to Suppress is hereby **DENIED**.

**IT IS SO ORDERED,** this 16th day of September, 2015.

          s/ Sheryl H. Lipman
          SHERYL H. LIPMAN
          UNITED STATES DISTRICT JUDGE